**Rider v. Smith**

*Rob A. Krug,* for plaintiff.
*Gary E. Hartman,* for defendant Craig P. Smith.
*Jay W. Stark,* for defendant Kenneth L. Hess.
*Walton V. Davis,* for defendant Ila A. Keiner.

SPICER, *P.J.,* February 12, 1990 — On September 5, 1989, the undersigned refused a request by defendants for summary judgment in this malicious prosecution case. The refusal was based upon lack of undisputed facts. The court said, however, it could dispose of the case if permitted to assume facts heard in a replevin action previously decided.

Counsel, ever resourceful, promptly made the transcript of the previous replevin case (88-S-606) a part of this case. Plaintiff admitted that the transcript was correct but contended that it was irrelevant to the present proceedings.

Neither party has addressed the effect of the court's verdict on disputed facts in the first case. We will not address issues of collateral estoppel sua sponte. Rather, we examine the transcript to determine if any facts are in dispute which pertain to the central issue, of probable cause for the arrest of plaintiff on charges of theft.

Reviewing only plaintiff's testimony, we learn that he was at a hunting camp with several other people on November 24, 1987. He saw and shot a bear in the neck. The bear initially fell but regained momentum and ran toward Craig Smith's tree stand. Plaintiff heard four more shots. He responded to a yell and found the bear, which was dead. Smith claimed ownership because he had shot it last. A more venerable hunter said, "Young man, it doesn't matter who shot it last, it matters who killed the bear."

When plaintiff also claimed the bear, the same

spokesman without portfolio told Smith, "Regardless of whose bear it is, young man, would you please go get the truck? We need a truck to get it out of here." According to plaintiff, Smith then left.

The replevin judgment conclusively established Smith's ownership. That judgment, which cannot now be assailed by plaintiff, was based upon uncontradicted testimony that Smith inflicted a mortal wound which stopped the flight of the bear.

Hunting can be potentially a very dangerous sport. We deal with enough accidents without disputes over ownership becoming a concern. The Pennsylvania Game Commission is fully cognizant of this and periodically issues bulletins for the education of hunters. In one such bulletin issued November 2, 1987, the commission discussed ownership of slain game and continued the standards first established in the Game Law of Pennsylvania, 34 P.S. §728 (now repealed). In cases involving two hunters, the one who delivers a mortal wound which stops the flight of the animal is entitled to ownership. The present law combines two sections and less specifically provides that game becomes the property of the hunter who inflicts a mortal wound which enables the hunter to take possession. 34 P.S. §2304.

The Game Commission warned, in the November 2, 1987 bulletin, that once a hunter inflicts a mortal wound and stops flight, it becomes larceny for another to take that animal. The commission commented:

"The 'mortal wound' definition of section 728 served the best interests of the hunting public and the Game Commission since enactment in 1937 (40 years) without problems and this same position should be applied today . . . "

Plaintiff's claim bore no relationship to this rule. His definition of mortal wound meant that the

animal would drop, eventually. He said it didn't matter how far the animal went because he believed "the bear was about to fall over."

Basically, we have dealt with the scenario envisioned by the Game Commission bulletin. Plaintiff was charged with theft. We sympathize with him. So did, apparently, another judge who dismissed the charges. However, we think plaintiff was correctly (perhaps not "rightfully") charged with theft. We summarized the elements of theft in our prior opinion. It is clear plaintiff took property of another with the intent to deprive Mr. Smith permanently of it. It might be also clear that plaintiff did so under a good-faith claim of right, but that is a defense and does not go to the issue of probable cause.

The case of *Commonwealth v. Benz,* 523 Pa. 203, 565 A.2d 764 (1989), is instructive. In holding that a private complaint had been improperly dismissed, our highest state court taught that matters of defense are not to be considered when determining whether a prima facie case has been alleged. Issues in that case involved voluntary manslaughter and justification of excuse. "Thus," the Supreme Court said, "evidence as to justification or excuse would not negate a determination of a prima facie case, but is a matter that is properly raised in defense at trial." *Benz, supra.*

The issues are different but the principles are the same.

## ORDER OF COURT

And now, February 12, 1990, summary judgment is entered in favor of defendants and against plaintiff.